In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 25-1067, 25-1134, 25-1285, 25-1336

CONSOLIDATED CHASSIS MANAGEMENT LLC and CHICAGO-OHIO VALLEY CONSOLIDATED CHASSIS POOL LLC,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

NORTHLAND INSURANCE COMPANY,

*Defendant-Appellant/Cross-Appellee*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-05287 — **Jeremy C. Daniel**, *Judge*.

ARGUED FEBRUARY 24, 2026 — DECIDED AUGUST 5, 2026

Before BRENNAN, *Chief Judge*, and EASTERBROOK and TAIBLESON, *Circuit Judges*.

TAIBLESON, *Circuit Judge*. This protracted insurance dispute arises from a 2016 traffic accident in Will County, Illinois, involving a car and a commercially owned and operated semi-tractor. The car's driver sued, and all the defendants to that suit—the owner and driver of the semi-tractor and the

companies that controlled the chassis—were insured by Northland Insurance Company. Northland retained separate attorneys to represent its insureds. But the chassis companies (Consolidated Chassis Management LLC and Chicago-Ohio Valley Consolidated Chassis Pool LLC, which we refer to collectively as "Consolidated") did not want Northland's chosen counsel, and Consolidated instead retained and paid for independent counsel. Consolidated then sued Northland in federal court, seeking reimbursement from Northland for the cost of that independent counsel as well as penalties under § 155 of the Illinois Insurance Code.

The district court entered judgment in favor of Consolidated as to its declaratory relief and breach of contract claims, concluding that under Illinois law, Consolidated was entitled to its own choice of independent counsel at Northland's expense. But the district court entered judgment in favor of Northland as to the § 155 claim, finding that Northland did not engage in vexatious and unreasonable conduct prohibited by that statute.

We affirm in part and reverse in part. Illinois law creates a narrow exception to the insurer's right to control its insured's defense where there are serious, actual conflicts between the interests of the insurer and insured. No such conflict arose here, so Consolidated is not entitled to recover from Northland for its expenditures on independent counsel. Because Northland fulfilled its duty to defend, it neither breached its contract with Consolidated nor violated § 155 of the Illinois Insurance Code.

## I. Background

This case arises out of a separate lawsuit, in which Ryan Gilliam-Nault—who is not a party here—sued Consolidated, a trucking company named Midvest Transport Corporation, and a driver for Midvest named Bakari Lambert (the "*Gilliam-Nault* suit"). In that lawsuit, Gilliam-Nault brought negligence claims arising from injuries he suffered in a traffic accident involving his car and Midvest's semi-tractor. At the time of the accident, the semi-tractor, driven by Lambert, was pulling an intermodal chassis that was part of a chassis pool established and managed by Consolidated.[1]

Northland had issued Midvest a commercial insurance policy that also covered anyone "liable for the conduct of an 'insured'" or the "owner or … anyone else from whom [Midvest] hire[d] or borrow[ed]" a qualifying trailer, such as a chassis. Northland was therefore the insurer for all defendants to the *Gilliam-Nault* suit. The policy covered damages up to a $1 million limit.

Under Illinois law, Northland had "a broad duty to defend its insured[s]" in the *Gilliam-Nault* suit. *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009). Ordinarily, that duty to defend carries with it the "right to control and direct the defense." *Id.* The policy at issue here memorialized that principle, stating that the insured parties must "[a]ssume

---

[1] An intermodal chassis is the wheeled under-frame that attaches to the back of a semi-tractor, providing support for shipping containers in transit. Chassis are interchangeable and commonly sourced through chassis pools, which operate a centralized hub for intermodal carriers, such as Midvest, to rent them. Midvest owned the semi-tractor and rented the chassis from the pool established and managed by Consolidated.

no obligation, make no payment or incur no expense without [Northland's] consent, except at the 'insured's' own cost," and must "[c]ooperate with [Northland] in the investigation or settlement of the claim or defense against the 'suit.'"

Consolidated retained the law firm Schuyler, Roche & Crisham, P.C. ("SRC") to represent it in the *Gilliam-Nault* suit. A few weeks later, Northland sent Consolidated a letter stating that Northland would defend Consolidated, subject to a reservation of rights to disclaim coverage if Northland later determined that Consolidated was not an insured under its policy. Northland also informed Consolidated that it had retained an attorney at the law firm Litchfield Cavo to represent Consolidated in the *Gilliam-Nault* suit. But Consolidated continued to work with SRC, which filed Consolidated's answer to Gilliam-Nault's complaint and asserted crossclaims for contribution against Midvest and Lambert. Those claims alleged, strictly in the alternative, that Midvest and Lambert had been negligent in their operation of the semi-tractor.

In response to Northland's letter, Consolidated asserted that it was entitled to counsel of its choice (*i.e.*, SRC) at Northland's expense. Under Illinois law, certain serious, actual conflicts of interest—which ones, specifically, we address further below—require an insurer to "pay the costs of independent counsel for the insured" rather than to "participat[e] in the defense itself." *Murphy v. Urso*, 88 Ill. 2d 444, 452 (1981); *see Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 156 (1999). Here, Consolidated pointed to two conflicts of interest: one based on Northland's reservation of rights, and another based on Northland's defense of both Consolidated and Midvest/Lambert, whose interests in the *Gilliam-Nault* suit were not fully aligned. The next day, Northland informed

Consolidated that it was withdrawing its reservation of rights, thereby (according to Northland) eliminating any conflict of interest that would entitle Consolidated to its own choice of counsel.

SRC continued to represent Consolidated, although Litchfield Cavo also appeared in the case on Consolidated's behalf. As discovery progressed, Consolidated asserted that another conflict of interest existed because damages in the *Gilliam-Nault* suit could exceed the $1 million policy limit. Northland disagreed and refused to reimburse Consolidated for SRC's legal services.

While the *Gilliam-Nault* suit was pending, Consolidated filed this action against Northland. Consolidated sought declaratory and compensatory relief for Northland's alleged breach of contract, and it also claimed that Northland's vexatious and unreasonable conduct entitled Consolidated to attorneys' fees (arising from this action) and penalties under § 155 of the Illinois Insurance Code. The parties cross-moved for judgment on the pleadings.

The district court at first granted Northland's motion, concluding that no conflict of interest existed that required Northland to reimburse Consolidated for its chosen counsel. But the court subsequently granted Consolidated's motion for reconsideration, concluding that such a conflict did in fact exist. Around the same time, the underlying *Gilliam-Nault* suit settled, and Northland paid the entire settlement (which was within policy limits) on behalf of its four insureds.

In this case, meanwhile, multiple motions for reconsideration, cross-motions for summary judgment, and judicial reassignments followed. For our purposes, it suffices to

describe only the bottom line: Based on its prior ruling on re-consideration that Consolidated was entitled to independent counsel, the district court granted Consolidated's motion for summary judgment and entered judgment in its favor in the stipulated sum of $115,000. But the district court found that Northland did not engage in vexatious and unreasonable conduct prohibited under § 155, so it entered judgment in favor of Northland as to that claim.

Northland appealed the district court's judgment as to Consolidated's breach of contract and declaratory relief claims. Consolidated cross-appealed as to its claim for attorneys' fees and penalties under § 155 of the Illinois Insurance Code.

## II. Discussion

Although its procedural history is complex, this appeal turns on one question of Illinois law: Did the conflicts among Consolidated, Midvest, Lambert, and Northland in defending the *Gilliam-Nault* suit entitle Consolidated to its choice of independent counsel at Northland's expense? We review *de novo* the district court's assessment of that question in its orders on the motions for judgment on the pleadings, motions for summary judgment, and three-fold motions for reconsideration. *See Bannon v. Univ. of Chi.*, 503 F.3d 623, 627–28 (7th Cir. 2007); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012).

We begin by reviewing the insurance policy in this case, which is the contract that governs the relationship between insurer and insured. All agree that the policy covered the *Gilliam-Nault* accident and covered Consolidated specifically as an "additional insured." *See Am. Fam. Ins. Grp. v. Cleveland*,

356 Ill. App. 3d 945, 950 (2005). As a result, the policy obligated Northland to "pay all sums an 'insured' legally must pay as damages" in the *Gilliam-Nault* suit, up to the $1 million limit. And the policy imposed a "right and duty [upon Northland] to defend any 'insured' against a 'suit' asking for such damages." Significantly, the policy also stated that Consolidated must "[a]ssume no obligation, make no payment or incur no expense without [Northland's] consent, except at the 'insured's' own cost," and must "[c]ooperate with [Northland] in the investigation or settlement of the claim or defense against the 'suit.'"

Here, Consolidated retained its own counsel without Northland's consent and now seeks reimbursement for that expense. While Consolidated does not dispute that the plain language of the policy gave Northland the right to control Consolidated's defense, Consolidated contends that a conflict of interest triggered an exception to that provision under Illinois law. We exercise caution before departing from the clear and unambiguous terms of a contract, and we will not do so unless those terms are "clearly contrary" to Illinois law or public policy. *Am. Access Cas. Co. v. Reyes*, 2013 IL 115601, ¶ 9 (2013) ("A contractual provision will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare."); *see also Hartford Accident & Indem. Co. v. Lin*, 97 F.4th 500, 512 (7th Cir. 2024) (applying Illinois law) ("The clear and unambiguous terms of insurance policies must be enforced as written."). We look primarily to decisions of the Supreme Court of Illinois to determine such law or policy, although "a state appellate court's decision can provide controlling guidance as well." *Smith v. RecordQuest,*

*LLC*, 989 F.3d 513, 517–18 (7th Cir. 2021). Absent a Supreme Court of Illinois decision that squarely controls, we predict how that Court would rule, and "we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *Id.* at 517 (citation omitted).

Ultimately, we cannot agree with Consolidated that Illinois law trumps the terms of the policy here. Illinois law recognizes a narrow exception to the insurer's right to control its insured's defense where there exist serious, actual conflicts of interest between the insurer and its insured. But no such conflict existed between Northland and Consolidated. Consolidated argues that its adversity with Midvest and Lambert, alone, can trigger the right to independent counsel, but Illinois law does not support that proposition—especially not to the degree of certainty required to discard the contract's terms. Even if the right to independent counsel in Illinois does extend to conflicts solely based on adverse interests between insured codefendants, it applies only where their interests are diametrically opposed, which was not the case here.

### A.

As noted above, an insurer's duty to defend its insured in a potentially covered lawsuit is "broad." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 127 (1992). And "[a]long with an insurer's obligation to defend its insured comes its right to control and direct the defense." *Forge Indus.*, 567 F.3d at 874. That right to control the defense enables an insurer to "protect its financial interest in the litigation's outcome and minimize unwarranted liability claims." *Id.* (quoting *Stoneridge Dev. Co. v. Essex Ins. Co.*, 382 Ill. App. 3d 731, 742 (2008)).

But there is "an exception to th[is] general rule": An insurer has no duty to defend—and in fact "must decline to defend"—where "there is a conflict of interest between it and the insured." *Murphy*, 88 Ill. 2d at 451. The conflict must be "serious," *Ehlco*, 186 Ill. 2d at 156, and "actual, not merely potential," *Forge Indus.*, 567 F.3d at 874 (citing *Murphy*, 88 Ill. 2d at 453–54). In such cases, the insured, rather than the insurer, has "the right to control the conduct of the case." *Md. Cas. Co. v. Peppers*, 64 Ill. 2d 187, 199 (1976). And "[i]nstead of participating in the defense itself, the insurer must pay the costs of independent counsel for the insured." *Murphy*, 88 Ill. 2d at 452; *see also Peppers*, 64 Ill. 2d at 199.

Such a conflict of interest can arise when the insurer's own "interests would be furthered by providing a less than vigorous defense" to its insured in the underlying suit. *Forge Indus.*, 567 F.3d at 875 (quoting *Ill. Masonic Med. Ctr. v. Turegum Ins. Co.*, 168 Ill. App. 3d 158, 163 (1988)). That typically occurs where, "after comparing the complaint against the insured to the insurance policy, 'it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to "lay the groundwork" for a later denial of coverage.'" *Id.* (quoting *Am. Fam. Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 363 Ill. App. 3d 505, 511 (2006)). Imagine, for example, that the "underlying complaint contains two mutually exclusive theories of liability, one which the policy covers and one which the policy excludes"—like negligence (covered) and intentional conduct (excluded). *Id.* In this circumstance, the insurer might be happy for a jury to find that its insured had acted intentionally, leaving the insured liable but the insurer off the hook. That type of scenario creates a very real conflict between the interests of the insurer

and insured in defending the underlying case. *See Peppers*, 64 Ill. 2d at 198.

The Supreme Court of Illinois's decision in *Murphy v. Urso* illustrates the type of conflict that warrants an exception to the insurer's duty to defend. In that case, Joyce Murphy was injured when she was a passenger in a van that crashed. 88 Ill. 2d at 448. Murphy sued the driver of the van, as well as the van's owners (a school and its operator). *Id.* Although all defendants were at least putatively insured by Travelers Insurance Company, the insurance policy covered the driver only if he "had permission to use the van." *Id*. at 453. And whether the driver had permission "was the principal contested issue" in Murphy's suit. *Id.* If the driver lacked permission, then the school would be off the hook, as would Travelers—but the driver would remain liable. *Id.* In these circumstances, *Murphy* held, the "permission issue presented a fundamental conflict between the insurer and the putative insured," such that Travelers was "not obligated or permitted to participate in the [driver's] defense." *Id.* at 454.

That aspect of *Murphy*—the significance of a conflict between an insurer and its insured—is undisputed here. But other language in *Murphy* is at the heart of the parties' disagreement in this case. In addition to the "fundamental problem" of an insurer-insured conflict, the *Murphy* court also observed that the interests of the insureds themselves (the school and driver) were "diametrically opposed" in the underlying suit. *Id.* at 453. The school's best defense would require showing that the driver lacked permission to use the van. *Id.* The driver, by contrast, "had to try to show that he did have permission," which "would spread the liability" to the school. *Id.*

Both Consolidated and the district court interpret this passage in *Murphy* as extending the conflict-of-interest exception to reach conflicts between insured codefendants, regardless of whether any real conflict exists between the interests of the insurer and insured. Northland disagrees, and so do we. The language in *Murphy* that reads like a holding—rather than a description of the case—focuses on the conflict between the interests of the insurer and insured. *See, e.g.*, *id.* at 451 (stating that "this case turns on" the "exception" that an "insurer must decline to defend where there is a conflict of interest between it and the insured"); *id.* at 453 (after describing diametric opposition between school and driver, turning to the "even more fundamental problem" of "the conflict between [the insurer's] own interests and [the driver's]").

*Murphy* also relied on the Supreme Court of Illinois's decisions in *Peppers*, 64 Ill. 2d 187, and *Thornton v. Paul*, 74 Ill. 2d 132 (1978), both of which similarly described the exception as arising from conflicts between interests of the insurer and the insured. *See, e.g.*, *Murphy*, 88 Ill. 2d at 458 (summarizing conclusion: "For the reasons stated, this case falls within the exception enunciated in *Thornton*. Conflicts of interest with the putative insured relieve the insurer from his defense."). And on the same day *Murphy* was issued, the Supreme Court of Illinois also decided *Clemmons v. Travelers Insurance Co.*, which discussed *Murphy* and framed the exception in the same way. 88 Ill. 2d 469, 478 (1981) (the "limited exception" applies where "there is a conflict of interest between the insurer and the putative insured"). In distinguishing *Murphy*, *Clemmons* highlighted the coverage dispute—regarding permission to drive the van—that was at the root of the conflict between the *Murphy* insurer and insured (the driver). *Id.* at 478 (noting that in *Murphy*, the insurer's "loyalty" was "torn" "when

permission [wa]s at issue" in the underlying suit); *see also id.* at 479 (no conflict where the insurer "could not manipulate the proceedings in the [underlying] suit to lay the groundwork" to later deny coverage to insured).

Other Illinois cases similarly recognize an exception to the duty to defend when issues determining policy coverage are contested in the underlying suit, producing a direct conflict between the interests of the insurer and insured in defending that suit. *See, e.g.*, *Xtreme Prot. Servs., LLC v. Steadfast Ins. Co.*, 2019 IL App (1st) 181501, ¶ 24 (insurer disclaimed liability for punitive damages); *W.H. McNaughton Builders, Inc.*, 363 Ill. App. 3d at 510–15 (incidents at issue may have occurred before policy took effect); *Ill. Masonic Med. Ctr. v. Turegum Ins. Co.*, 168 Ill. App. 3d at 167–68 (incidents at issue may have occurred after policy coverage lapsed); *Peppers*, 64 Ill. 2d at 197–99 (policy covered negligent but not intentional conduct).

These cases all emphasize one common feature: an actual conflict, based on the allegations in the underlying complaint, between the interests of the insurer and its insured. Consolidated identifies no Illinois case, nor have we found one, that finds an exception to the duty to defend based on adverse interests between insureds alone, without any concurrent conflict directly between the insurer and the insured. We do not see that as a mere coincidence.

To be fair, some Illinois appellate court decisions, following *Murphy*, have emphasized "diametrically opposed" interests between insured codefendants in finding a conflict that triggers the independent-counsel exception. *See Williams v. Am. Country Ins. Co.*, 359 Ill. App. 3d 128, 138 (2005); *County Mut. Ins. Co. v. Olsak*, 391 Ill. App. 3d 295, 304 (2009). But—like *Murphy*—each of those cases also involved a conflict

directly between the interests of the insurer and insured, where the insurer had an incentive to favor one insured party in diametric opposition to the other. *Williams*, 359 Ill. App. 3d at 138–39 (policy coverage turned on whether insured party was acting as agent of coinsured, which was the same issue as to which insureds were diametrically opposed); *Olsak*, 391 Ill. App. 3d at 299, 304 (policy excluded intentional conduct, which was the same issue as to which insureds were diametrically opposed). As in *Murphy*, we understand the "diametric opposition" in those cases to have underscored, and exacerbated, the conflicts that the insurers faced directly with their insureds. *See Clemmons*, 88 Ill. 2d at 478. The conflict between the insureds thus did not stand alone.

We have found (and the parties have cited) only one Illinois case considering a conflict between two insureds where the insurer itself lacked a dog in the fight, and that case supports our conclusion. *See Findlay v. Chi. Title Ins. Co.*, 2022 IL App (1st) 210889, *appeal denied*, 460 Ill. Dec. 568 (2023). In *Findlay*, the court concluded that an insured was *not* entitled to its choice of counsel where, in the underlying suit, it was directly adverse to another party covered by the same insurer. *Id*. ¶¶ 48–52. As in this case, the insurer had appointed separate counsel to represent each of its insureds. *Id.* ¶ 51. But because the insurer "had no incentive to favor one insured over another," there was no conflict between the interests of the insurer and insured, and the insured was not entitled to choose their own counsel at the insurer's expense. *Id.* ¶ 52.

For these reasons, we interpret Illinois law as requiring an actual, serious conflict between the interests of an insurer and an insured to trigger the right to independent counsel. Diametric opposition between insureds may be part of that

calculus, underscoring the severity of an insurer-insured conflict, but adversity between insured codefendants alone does not trigger this "narrow" exception. *See Ehlco*, 186 Ill. 2d at 156.

**B.**

No actual, serious conflict between Northland and Consolidated existed here. Gilliam-Nault's complaint exclusively alleged claims of negligence against Consolidated, Midvest, and Lambert. And Northland's policy covered damages, up to the $1 million policy limit, arising from an accident involving its insured. There were no concerns about intentional conduct, *see Peppers*, 64 Ill. 2d at 197–98, or agency or permission, *see Murphy*, 88 Ill. 2d at 453–54, that may have brought Consolidated outside the scope of Northland's policy. Indeed, Northland expressly withdrew any reservation of its rights to deny coverage in undertaking Consolidated's defense. *See Peppers*, 64 Ill. 2d at 198 (if an insurer "waives its defense of noncoverage" and "defends without asserting a reservation of rights … the conflict of interests will be removed"); *Doe v. Ill. State Med. Inter-Ins. Exch.*, 234 Ill. App. 3d 129, 134–35 (1992) ("Assumption and control of the insured's defense, absent a reservation of rights, estops the insurer from questioning policy coverage.") (citing *Gibraltar Ins. Co. v. Varkalis*, 46 Ill. 2d 481 (1970)).

It is true that, for about a ten-week period after SRC tendered Gilliam-Nault's complaint to Northland, Northland reserved its rights to confirm whether Consolidated was an "additional insured" under the policy—a common practice in this industry. But Northland immediately withdrew that reservation after SRC asserted that it created a conflict between Northland and Consolidated. That temporary reservation did

not give rise to an actual, serious conflict in defending the *Gilliam-Nault* suit. We can find no Illinois case holding that every reservation of rights, even a temporary one, automatically results in a conflict of interest. Instead, the ultimate question is whether, given the nature of the underlying suit, the reservation could be leveraged to later disclaim coverage or otherwise further the interest of an insurer at the expense of its insured's defense. *Cf. Shelter Mut. Ins. Co. v. Bailey*, 160 Ill. App. 3d 146, 155 (1987) ("A conflict cannot be inferred merely because an insurance company is asserting noncoverage in a separate suit. The test is whether or not there are conflicting interests based upon the allegations found in the complaint."). There is no such indication here. Because there was no risk that Northland would "manipulate the proceedings" in the *Gilliam-Nault* suit to "lay the groundwork" to later disclaim coverage, no conflict arose between Northland and Consolidated. *See Clemmons*, 88 Ill. 2d at 479.

In lieu of a real conflict with its insurer, Consolidated emphasizes its adversity with Midvest and Lambert, against whom it filed crossclaims in the *Gilliam-Nault* suit. As discussed above, the tension between Consolidated and its codefendants, alone, does not trigger Consolidated's right to counsel of its own choosing. Unlike *Murphy* or the other Illinois cases discussing conflicts between insured parties, Northland had no stake in the dispute between its insureds here. Northland's policy coverage was unaffected by the conditional crossclaims; it was on the hook no matter how they were resolved. This case therefore lacks the insurer-insured conflict that has triggered the right to independent counsel in Illinois case law. In the absence of clear Illinois law telling us otherwise, then, we must hold the parties to their contract,

which granted Northland the right to control its insureds' defense.

## C.

Even if we were to read *Murphy* as recognizing a standalone conflict based on adverse interests between coinsureds, it would establish that the right to independent counsel is triggered only where those interests are "diametrically opposed." *Murphy*, 88 Ill. 2d at 453. That standard is not met here, either.

*Murphy* did not expressly define diametric opposition, but the facts of *Murphy* provide a helpful guidepost. In the underlying *Murphy* suit, the driver's negligence "could not be realistically contested," and the "principal contested issue" was therefore his "permission to use the van." *Id.* at 451–53. The codefendants were "diametrically opposed" as to that principal issue, as their "best defen[ses]" were mutually exclusive with each other. *Id.* at 453. Consolidated cites *Williams v. American Country Insurance*, as another example. But that case similarly involved insured codefendants whose "best" strategy was to blame each other. 359 Ill. App. 3d at 139.

The conflict between the insureds' interests in this case is different in kind than the ones at issue in *Murphy* or *Williams*. Here, the allegations in the complaint and in the insureds' answers and crossclaims demonstrate that the best strategy was for Consolidated, Midvest, and Lambert to each deny their own negligence and argue Gilliam-Nault's comparative negligence. It is true that Consolidated filed crossclaims against Midvest and Lambert under the Joint Tortfeasor Contribution Act, 740 ILCS 100/1, *et seq.*, which allows a joint tortfeasor to recover from another if they are found liable to the plaintiff

and pay more than their *pro rata* share of liability. *See id.* Such crossclaims are routine and, in Illinois, waived if not filed in the underlying litigation. *See Laue v. Leifheit*, 105 Ill. 2d 191, 196 (1984). But nothing in the pleadings indicates, nor does Consolidated argue, that its best or primary defense was to blame Midvest and Lambert for the accident. And even if Consolidated's best defense had been to argue Midvest's and Lambert's negligence, there is no indication that Midvest's and Lambert's best defense was to argue Consolidated's negligence. The *Gilliam-Nault* codefendants were not, as a result, "diametrically opposed," as the Supreme Court of Illinois has used that phrase. *See Murphy*, 88 Ill. 2d at 453.

Consolidated also argues that its interests were diametrically opposed to Midvest and Lambert given the risk of a verdict in excess of Northland's $1 million policy limit, citing discovery that revealed expensive medical bills and Gilliam-Nault's settlement demand of $2.5 million. Given that risk, Consolidated argues, it had an interest in shifting as much blame as possible to Midvest or Lambert to avoid being saddled with an excess judgment. Consolidated relies on this court's decision in *R.C. Wegman Construction Co. v. Admiral Insurance Co.*, 629 F.3d 724 (7th Cir. 2011), for the proposition that a conflict of interest arises from a "nontrivial probability" of an excess judgment in an underlying suit. *See id.* at 730.

But Consolidated misreads *Wegman*. That case concerned an insurer who had "gambl[ed]" with its insured's case by going to trial on a claim that it knew likely and significantly exceeded the policy limit without informing its insured of that strategy or attempting to settle the case for a covered amount. *Id.* at 728–29; *see also R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 634 F.3d 371, 372 (7th Cir. 2011) (mem.) (clarifying

opinion on denial of rehearing). No evidence remotely of that nature exists here. To the contrary, Northland settled this case within policy limits and footed the bill for all its insureds before any trial. Nor does the risk of an excess judgment generally give rise to diametrically opposed defense strategies between insureds, or to a serious and actual conflict with the insurer. *See Joseph T. Ryerson & Son v. Travelers Indem. Co.*, 2020 IL App (1st) 182491, ¶ 57 (expressly rejecting "proposition that 'a conflict exists when there is "a nontrivial probability" of an excess judgment in the underlying suit,' thereby entitling an insured to retain independent defense counsel at the insurer's expense"). If it did, then Illinois's "narrow" exception to the duty to defend would risk swallowing the rule, as many cases pose some risk of recovery in excess of policy limits. *Ehlco*, 186 Ill. 2d at 156; *see Murphy*, 88 Ill. 2d at 458 (emphasizing that the "exception is not meant to swallow the general rule requiring the insurer to provide its insured with a defense"); *Ryerson*, 2020 IL App (1st) 182491, ¶ 57 ("[M]any cases involve a 'nontrivial probability' of a judgment in excess of the applicable policy limits that the insured could be personally responsible to pay.").

It is true that Consolidated's interests in the *Gilliam-Nault* suit were in some tension with Midvest's and Lambert's. Northland handled that situation by appointing separate counsel for Consolidated and for Midvest and Lambert— counsel that were independent of each other, if not of Northland. The Illinois Rules of Professional Conduct likely required as much. *See* Ill. R. Prof'l Conduct R. 1.7 (2010) (prohibiting an attorney from representing two clients with adverse interests unless certain conditions met); *cf. Findlay*, 2022 IL App (1st) 210889, ¶¶ 51–52 (finding insurer's appointment of separate and independent counsel for its insureds

eliminated conflict of interest). While Consolidated preferred counsel of its own choosing, Illinois law did not require that result—at the very least, not clearly enough to supersede the parties' contract and establish an exception to the broad duty to defend.

The district court therefore erred in granting judgment in favor of Consolidated on its claims for declaratory relief and breach of contract, and we reverse as to those claims.

### D.

Finally, we turn to Consolidated's cross-appeal of the district court's judgment in favor of Northland on the claim for attorneys' fees and penalties under § 155 of the Illinois Insurance Code.

Section 155 permits a court to award attorneys' fees, costs, and statutory damages if an insurer "unreasonabl[y] delay[s] in settling a claim, and it appears to the court that such … delay is vexatious and unreasonable." 215 ILL. COMP. STAT. 5/155(1). Section 155 "provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit." *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679 (7th Cir. 2014). In other words, where there is no underlying legal wrong by the insurer, there is no violation of § 155. *See Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 519–20 (7th Cir. 2025).

Northland did not breach its duty to defend or its contract with Consolidated. As a result, Consolidated's § 155 claim necessarily fails, and the district court's judgment as to that claim is affirmed.

\* \* \*

The district court's judgment is REVERSED in part and AFFIRMED in part.

BRENNAN, *Chief Judge*, concurring in the judgment. My reading of Illinois insurance law differs somewhat from my colleagues. To me, *Murphy v. Urso*, 88 Ill. 2d 444, 452–53 (1981), and subsequent caselaw recognize more than one circumstance in which a conflict of interest entitles the insured to independent counsel of its own choosing at the insurer's expense. One of these is when the interests of multiple insureds are "diametrically opposed." *Id.; see Illinois Mun. League Risk Mgt. v. Seibert*, 223 Ill. App. 3d 864, 872–73 (1992); *Williams v. Am. Country Ins. Co.*, 359 Ill. App. 3d 128, 138–39 (2005); *Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am.*, 2020 IL App (1st) 182491, ¶ 54.

Illinois courts recognize this kind of conflict because it is impossible for an insurer to provide a "full and vigorous defense" to each of the represented parties. *Murphy*, 88 Ill. 2d at 453. That rationale can apply even when other conflict-creating circumstances are not present. And *Findlay v. Chi. Title Ins. Co.*, 2022 IL App (1st) 210889, does not persuade me otherwise. Title insurance policies, unlike general liability policies, do not entitle their insureds to a full and vigorous defense. *Id.* at ¶¶ 53–64.

Still, I concur in the judgment because the interests of the insureds in this case though adverse are not necessarily "diametrically opposed." On the question of whether Midvest and Lambert were negligent, Consolidated's interests are certainly opposed to their interests. Consolidated submits that Midvest and Lambert are wholly or primarily liable; they contend they are not. But Midvest and Lambert do not try to shift the blame back onto their co-insured, Consolidated. They did not file a crossclaim against Consolidated, nor do their other pleadings contain any such argument. So, even if

Consolidated's best defense was to blame its co-insureds, I agree with the majority's conclusion. Unlike in *Murphy* and *Williams*, the best defenses of the co-insureds here were not diametrically opposed. Absent a conflict of interest, Consolidated was not entitled to independent counsel at Northland's expense.